# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISON

| | |
|---|---|
| ALEKSANDR UZUN, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) CIVIL ACTION<br>) |
| ARRIS INTERNATIONAL PLC, ANDREW M. BARRON, J. TIMOTHY BRYAN, JAMES A. CHIDDIX, ANDREW T. HELLER, JEONG KIM, BRUCE MCCLELLAND, BARTON Y. SHIGEMURA, ROBERT J. STANDZIONE, DOREEN A. TOBEN, DEBORA J. WILSON, and DAVID A. WOODLE, | ) NO. _____<br>)<br>)<br>)<br>)<br>) JURY TRIAL DEMANDED<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS

Plaintiff Aleksandr Uzun ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff, a stockholder of ARRIS International plc ("ARRIS" or the "Company"), brings this action against the members of ARRIS's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further

defined below) for violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), as well as Rule 14a-9 promulgated thereunder by the U.S. Securities and Exchange Commission (the "SEC").  Specifically, Defendants solicit the vote of common stockholders of ARRIS in connection with the sale (the "Proposed Transaction") of the Company to CommScope Holding Company, Inc. ("CommScope") through a preliminary proxy statement that omits material facts necessary to make the statements therein not false or misleading.  Stockholders need this material information to decide whether to vote for or against the Proposed Transaction.

2. On November 8, 2018, the Company and CommScope entered into a definitive agreement ("Merger Agreement") under which CommScope will acquire all of the outstanding common shares of ARRIS in an all-cash transaction (the "Proposed Transaction").  If consummated, shareholders will receive $31.75 in cash per common share of ARRIS.  The Proposed Transaction has a value of approximately $7.4 billion.

3. On November 30, 2018, Defendants issued materially incomplete and misleading disclosures in the Schedule 14A Preliminary Proxy Statement (the "Proxy") filed with the SEC in connection with the Proposed Transaction.  The

Proxy is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction.

4. Accordingly, Plaintiff alleges herein that Defendants violated Sections 14(a) and 20(a) of the 1934 Act in connection with the Proxy.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331-32, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

6. The Court has personal jurisdiction over each of the Defendants because each either is a corporation that is incorporated under the laws of, conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the Defendants either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and

other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

8.  Plaintiff is, and has been at all relevant times, the owner of ARRIS common shares.

9.  ARRIS is a public limited company organized under the laws of England and Wales.  The Company maintains its principal executive offices at 3871 Lakefield Drive, Suwanee, Georgia, 30024.  ARRIS common stock is listed on the NASDAQ for public trading under the ticker symbol "ARRS."

10.  Defendant Robert J. Stanzione is the Executive Chairman of the Company and has served as Chairman of the Board of Directors since 2003.  From 2000 to 2016, Defendant Stanzione served as the Chief Executive Officer ("CEO") of the Company, and from 1998 through 1999 was the President and Chief Operating Officer of the Company.

11.  Defendant Bruce McClelland has served as CEO and a director of the Company since September 1, 2016.

12.  Defendant Andrew M. Barron has served as a director of the Company since 2016.

13. Defendant J. Timothy Bryan has served as a director of the Company since 2015.

14. Defendant James A. Chiddix has served as a director of the Company since 2009.

15. Defendant Andrew T. Heller has served as a director of the Company since 2011.

16. Defendant Jeong Kim has served as a director of the Company since 2014.

17. Defendant Barton Y. Shigemura has served as a director of the Company since June 1, 2018.

18. Defendant Doreen A. Toben has served as a director of the Company since 2013.

19. Defendant Debora J. Wilson has served as a director of the Company since 2011.

20. Defendant David A. Woodle has served as a director of the Company since 2007.

21. Defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## FURTHER SUBSTANTIVE ALLEGATIONS

22. On November 8, 2018, CommScope issued a press release announcing the Proposed Transaction. The Press Release read in relevant part:

> CommScope (NASDAQ: COMM), a global leader in infrastructure solutions for communications networks, has agreed to acquire ARRIS International plc (NASDAQ: ARRS), a global leader in entertainment and communications solutions, in an all-cash transaction for $31.75 per share, or a total purchase price of approximately $7.4 billion, including the repayment of debt.
>
> In addition, The Carlyle Group, a global alternative asset manager, has reestablished an ownership position in CommScope through a $1 billion minority equity investment as part of CommScope's financing of the transaction.
>
> The combination of CommScope and ARRIS, on a pro forma basis, would create a company with approximately $11.3 billion in revenue and adjusted EBITDA (earnings before interest, taxes, depreciation and amortization) of approximately $1.8 billion, based on results for the two companies for the 12 months ended September 30, 2018.
>
> The combined company is expected to drive profitable growth in new markets, shape the future of wired and wireless communications, and position the new company to benefit from key industry trends, including network convergence, fiber and mobility everywhere, 5G, Internet of Things and rapidly changing network and technology architectures.
>
> ARRIS, an innovator in broadband, video and wireless technology, combines hardware, software and services to enable advanced video experiences and constant connectivity across a variety of environments – for service providers, commercial verticals, small enterprises and the people they serve. ARRIS has strong leadership positions in the three segments in which it operates:

- Customer Premises Equipment (CPE), featuring access devices such as broadband modems, gateways and routers and video set-tops and gateways;
- Network & Cloud (N&C), combining broadband and video infrastructure with cloud-based software solutions; and
- Enterprise Networks, incorporating the recently acquired Ruckus Wireless® and ICX Switch® businesses, and focusing on wireless and wired connectivity, including Citizens Broadband Radio Service solutions.

For the 12 months ended September 30, 2018, ARRIS generated revenues of approximately $6.7 billion, consisting of $3.9 billion from CPE, $2.2 billion from N&C and $568 million from Enterprise Networks (reflecting only a partial year of Ruckus since its acquisition in December 2017).

"After a comprehensive evaluation of our business and the evolving industry we operate in, we are confident that combining with ARRIS is the best path forward for CommScope to grow and provide the greatest returns for shareholders," said Eddie Edwards, president and chief executive officer, CommScope. "CommScope and ARRIS will bring together a unique set of complementary assets and capabilities that enable end-to-end wired and wireless communications infrastructure solutions that neither company could otherwise achieve on its own. With ARRIS, we will access new and growing markets, and have greater technology, solutions and employee talent that will provide additional value and benefit to our customers and partners.

"CommScope and ARRIS share a customer-first culture that emphasizes innovation, made possible by incredibly talented and experienced teams of people. As we have with numerous transactions in the past, we expect to work together with Bruce McClelland and the ARRIS team to create a best-in-class management team and achieve a seamless integration. Together, CommScope and ARRIS will be well positioned to serve a more

diverse set of customers and generate substantial value for our shareholders."

ARRIS Chief Executive Officer Bruce McClelland said, "CommScope is an ideal partner for ARRIS. In addition to providing immediate and substantial cash value to our shareholders, we are excited for what this combination will deliver for our customers, partners and employees around the world. Today's agreement is a testament to the strength of ARRIS: our leading technology, talented employees and established competitive position. With CommScope, we expect to further advance ARRIS' strategy to drive innovation across our iconic brands and pioneer the standards and pathways for tomorrow's personalized, connected always-on consumer experience. ARRIS will become part of an even stronger, more global industry leader, and I look forward to working with the CommScope team to achieve great results for the combined company."

**Transaction is a critical step in fueling growth, shareholder value and customer benefits:**

**Positioned to Capitalize on Positive Industry Trends:** The combined company will be well positioned to benefit from key industry trends by combining best-in-class capabilities in network access technology and infrastructure and creating end-to-end and comprehensive solutions. We believe trends such as network convergence, fiber and mobility everywhere, the advent of 5G and fixed wireless access, Internet of Things and rapidly changing network and technology architectures will provide compelling long-term opportunities for the combined company and its unique end-to-end communications infrastructure capabilities.

- **Unlocks Significant, High-Growth Segments and Increases Product Addressable Market:** The company expects to more than double its total product addressable market to more than $60 billion, with a unique set of

complementary assets and capabilities that enable end-to-end communications infrastructure solutions such as:
- Converged small cell solutions for licensed and unlicensed wireless spectrum;
- Complementary wired and wireless communications infrastructure;
- Integrated broadband access;
- Private network solutions for industrial, enterprises and public venues; and
- Comprehensive connected and smart home solutions.

- **Expanded Product Offerings and R&D Capabilities to Meet Diversified Customer Base:** CommScope and ARRIS will share strong technical expertise with approximately 15,000 patents and approximately $800 million in average annual research and development investments. With a stronger global footprint, the combined company is expected to serve customers across more than 150 countries.

- **Strong Financial Profile with Cost Savings Opportunities:** For the 12 months ended September 30, 2018, on a pro forma basis, the combined company would have generated revenues of approximately $11.3 billion with adjusted EBITDA of approximately $1.8 billion. As a result of the combined company's increased scale, CommScope expects to achieve annual run-rate cost savings of at least $150 million within three years post-close, with synergies of more than $60 million expected to be realized in the first full year after closing and more than $125 million expected to be realized after the second year post-close, driven from natural synergies primarily in direct procurement and SG&A.

- **Significantly Accretive to CommScope's Earnings:** The transaction is expected to be more than 30 percent accretive to CommScope's adjusted earnings per share by the end of

9

the first full year after closing, excluding purchase accounting charges, transition costs and other special items.

- **Maintains CommScope's Strong Balance Sheet, Credit Position and Financial Flexibility:** With a unique set of complementary assets and capabilities that enable end-to-end communications infrastructure solutions, the combined company is expected to generate approximately $1 billion in cash flow from operations1 in the first full year after closing. Upon completion of the transaction, CommScope's net leverage (debt less cash) ratio based on pro forma adjusted EBITDA1 for the 12 months ended September 30, 2018 is expected to be 5.1x, including full run-rate synergies of $150 million. Given the increased scale and cash flow generation, as well as both companies' track records of successful integration, CommScope expects to rapidly de-lever, targeting a net leverage ratio of approximately 4.0x in the second full year after closing. Long term, the company is targeting a net leverage ratio of 2.0x to 3.0x.

**Terms and Financing**

The per share cash consideration represents a premium of approximately 27 percent to the volume weighted average closing price of ARRIS' common stock for the 30 trading days ended October 23, 2018, the day prior to market rumors regarding a potential transaction.

The transaction is not subject to a financing condition. CommScope expects to finance the transaction through a combination of cash on hand, borrowings under existing credit facilities and approximately $6.3 billion of incremental debt for which it has received debt financing commitments from J.P. Morgan Securities LLC, BofA Merrill Lynch and Deutsche Bank Securities Inc.

In addition, The Carlyle Group, a former CommScope owner, is reestablishing a minority ownership position in the company through a $1 billion equity investment, equal to approximately 16 percent of CommScope's outstanding shares.

"We are delighted to resume our collaboration with CommScope's accomplished management team," said Cam Dyer, Carlyle managing director and global co-head of Technology, Media and Telecom. "We believe in the company's long-term strategy, customer-centric culture and ability to deliver results. This optimism has fueled our desire to be a part of such a promising transaction with ARRIS."

**Leadership and Headquarters**

Following completion of the combination, Eddie Edwards will continue in his role as president and chief executive officer of CommScope, with Bruce McClelland and other members of the ARRIS leadership team joining the combined company.

CommScope will remain headquartered in Hickory, NC, and the combined company will maintain a significant presence in Suwanee, GA. Upon completion of the transaction, CommScope will continue to be led by an experienced board of directors and management team that leverage the strengths of both companies.

**Approvals**

The transaction, which is expected to close in the first half of 2019, is subject to the satisfaction of customary closing conditions; expiration or termination of the applicable waiting period under the US Hart-Scott-Rodino Antitrust Improvements Act; receipt of certain regulatory approvals; and approval by ARRIS shareholders.

**Advisors**

Allen & Company LLC, Deutsche Bank, J.P. Morgan Securities LLC, and BofA Merrill Lynch are serving as financial advisors to

CommScope, and Alston & Bird LLP, Latham & Watkins LLP, Cravath, Swaine & Moore LLP, Pinsent Masons LLP and Skadden, Arps, Slate, Meagher & Flom LLP are serving as legal counsel. Evercore is serving as financial advisor to ARRIS. Troutman Sanders LLP, Herbert Smith Freehills LLP and Hogan Lovells LLP are serving as legal counsel to ARRIS. Simpson, Thacher & Bartlett LLP is serving as Carlyle's legal counsel.

**The Proxy Misleads ARRIS Stockholders by Omitting Material Information**

23. On November 30, 2017, ARRIS filed the materially misleading and incomplete Proxy with the SEC. Designed to convince stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the Company's expected future value as a standalone entity as evidenced by the Company's financial projections, the financial analysis underlying the fairness opinion provided by Evercore Group L.L.C. ("Evercore"), and the process ultimately leading to the Merger Agreement.

*Material Omissions Concerning the Company's Financial Projections and Evercore's Financial Analyses*

24. The Proxy describes Evercore's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Evercore's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, ARRIS's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Evercore's fairness

opinion in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to ARRIS stockholders.

25. With respect to Evercore's Discounted Cash Flow Analysis, the Proxy fails to disclose: (i) the Company's standalone, after tax, unlevered, free cash flows for October 31, 2018 through December 31, 2021 utilized by Evercore; (ii) the definition of after tax, unlevered, free cash flows; (iii) the estimated terminal value of ARRIS as of December 31, 2021; and (iv) the inputs and assumptions underlying the discount rate range of 10.0% to 11.0%.

26. With respect to Evercore's Selected Publicly Traded Companies' Analysis, the Proxy fails to disclose the individual total enterprise value to EBITDA ratios and market capitalization to net income ratio observed by Evercore as well as any benchmarking financial metrics of the selected companies and the objective selection criteria. Without such information, ARRIS's stockholders are unable to determine how the multiples used in determining ARRIS's value compare to the other companies. As a result, stockholders are unable to assess whether ARRIS and Evercore utilized unreasonably low multiples thereby rendering the implied share price ranges set forth in the analyses misleading.

27. The omission of this information renders the statements in the "Opinion of Financial Advisor" and "Certain Financial Projections" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Regarding the Continued Employment of Company Management*

28. The Proxy fails to disclose any negotiations or communications regarding the future employment of the members of ARRIS management, as well as the details of any employment related discussions and negotiations that occurred between CommScope and ARRIS executive officers, including who participated in all such communications, when they occurred, and their content. The Proxy further fails to disclose whether any of CommScope's prior proposals or indications of interest addressed the prospect of management retention.

29. The press release specifically states that "Bruce McClelland and other members of the ARRIS leadership team [will be] joining the combined company." Given that the acquirer is a strategic company, the strategic need for the ARRIS leadership team to join the combined company is not apparent, and in fact their continued employment appears redundant. Naturally, however, the ARRIS leadership team would prefer, and therefore prioritize, a transaction with a buyer who would continue to employ them over any transaction in which they would no longer enjoy a salary.

30. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

31. The omission of this information renders the statements in the "Background of the Merger" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

32. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and ARRIS**

33. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

34. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the 1934

Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. ARRIS is liable as the issuer of these statements.

35. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

36. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

37. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

38. The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

39. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

40. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

41. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of ARRIS within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of ARRIS and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

45. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that Defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

DATED this 6th day of December, 2018.

>                   Respectfully submitted,
>
> BY:   WEBB, KLASE & LEMOND, LLC
>
>       /s/ E. Adam Webb
>       E. Adam Webb
>         Georgia State Bar No. 743910
>       Matthew C. Klase
>         Georgia State Bar No. 141903
>
>       1900 The Exchange, S.E.
>       Suite 480
>       Atlanta, Georgia 30339
>       Tel: (770) 444-0773
>       Fax: (770) 217-9950
>       Email: Adam@WebbLLC.com
>              Matt@WebbLLC.com

**OF COUNSEL:**

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
       etripodi@zlk.com

*Attorneys for Plaintiff*
*Aleksandr Uzun*