# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ALEKSANDR UZUN,<br><br>　　　　Plaintiff,<br><br>　-against-<br><br>ARRIS INTERNATIONAL, PLC,<br>ANDREW W. BARRON, J. TIMOTHY<br>BRYAN, JAMES A. CHIDDIX,<br>ANDREW T. HELLER, JEONG KIM,<br>BRUCE MCCLELLAND, BARTON Y.<br>SHIGEMURA, ROBERT J. STANZIONE,<br>DOREEN A. TOBEN, DEBORA J.<br>WILSON, and DAVID A. WOODLE,<br><br>　　　　Defendants. | Case No.  18-CV-05555-WMR |
| LOUISE AGNES-SAMPSON,<br>Individually and On Behalf of All Others<br>Similarly Situated,<br><br>　　　　Plaintiff,<br><br>　-against-<br><br>ARRIS INTERNATIONAL, PLC,<br>ROBERT J. STANZIONE, BRUCE<br>MCCLELLAND, ANDREW W.<br>BARRON, J. TIMOTHY BRYAN,<br>JAMES A. CHIDDIX, ANDREW T.<br>HELLER, JEONG KIM, BARTON Y.<br>SHIGEMURA, DOREEN A. TOBEN,<br>DEBORA J. WILSON, and DAVID A.<br>WOODLE,<br><br>　　　　Defendants. | Case No.  19-cv-00243-WMR |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND <u>APPROVAL OF NOTICE TO SETTLEMENT CLASS</u>**

Plaintiffs and Defendants in the above-captioned actions (the "Actions") have reached an agreement to settle (the "Settlement"), as outlined in the Stipulation of Settlement[1] (the "Stipulation") dated December 9, 2019, subject to Court approval. *See* Exhibit 1 to Joint Declaration of Elizabeth K. Tripodi and Juan Monteverde ("Decl."). Plaintiffs file this unopposed[2] motion to respectfully request that the Court enter the proposed scheduling order ("Scheduling Order"), attached as Exhibit B to the Stipulation, which, among other things, will: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) certify the proposed Class for settlement purposes only, including certifying Plaintiffs Uzun and Agnes-Sampson as Class Representatives and appointing Webb, Klase & Lemond LLC as Liaison Counsel, and Monteverde & Associates P.C. and Levi & Korsinsky, LLP as Class Counsel; (iii) approve the form, substance and requirements of the Notice of

---

[1] The terms of the Stipulation are based on terms memorialized on January 18, 2019 in a Memorandum of Understanding (the "MOU").

[2] Defendants deny any wrongdoing whatsoever, and do not admit or agree that they violated any laws. This motion is unopposed by Defendants in that they do not oppose the granting of any of the relief requested herein. This brief is submitted solely by Plaintiffs and does not in all instances represent the views of Defendants.

Pendency of Class Action, Proposed Settlement, and Settlement Hearing (the "Notice"); (iv) find that the procedures established for mailing and distribution of the Notice are in full compliance with the notice requirements of due process, Fed. R. Civ. P. 23 and The Class Action Fairness Act of 2005 ("CAFA"); and (v) set a schedule and procedures for dissemination of the Notice to the Class, set deadlines to file papers in support of the Settlement and an award of attorney's fees and expenses and any objections thereto, and set a Settlement Hearing.

## I.   DESCRIPTION OF THE LITIGATION

On November 8, 2018, ARRIS and CommScope entered into an Acquisition Agreement, whereby CommScope would acquire ARRIS for $31.75 per share (the "Acquisition"). On November 30, 2018, ARRIS filed the Preliminary Proxy with the SEC. Soon after, two complaints were filed challenging the Acquisition: (i) *Uzun v. ARRIS International plc, et al.*, No. 1:18-cv-05555 (N.D. Ga. Dec 06, 2018) ("Uzun Action"); and (ii) *Kent v. ARRIS International plc, et al.*, No. 1:18-cv-01960-MN (D. Del. Dec 11, 2018) ("*Kent* Action"). Both the *Uzun* and *Kent* Actions alleged that Defendants violated §§14(a) and 20(a) of the Exchange Act, in connection with the Preliminary Proxy and sought to enjoin the closing of the Acquisition.

On December 19, 2018, ARRIS filed the Definitive Proxy (the "Proxy") with the SEC recommending that ARRIS shareholders vote in favor of the Acquisition at

a special shareholder meeting scheduled for February 1, 2019. Plaintiffs contend that additional information disclosed in the Proxy addressed certain claims in the *Uzun* Action concerning ARRIS's financial advisor's *Selected Publicly Traded Companies Analysis* and employment-related negotiations and communications in the Preliminary Proxy (the "Mooting Disclosures").

On December 26, 2018, Plaintiff Louise Agnes-Sampson ("A-S") filed the action captioned *Agnes-Sampson v. ARRIS International plc, et al.*, 1:18-cv-12205 (S.D.N.Y. Dec 26, 2018), alleging that the Defendants violated Sections 14(a) and 20(a) of the Exchange Act in connection with the Proxy and sought to enjoin the consummation of the Acquisition ("A-S Action"). On December 27, 2018, Plaintiff A-S filed a Motion for Preliminary Injunction (the "PI Motion") seeking to enjoin the shareholder vote on the Acquisition until certain supplemental disclosures were made to ARRIS shareholders.

On January 3, 2019, Plaintiff A-S filed a motion for expedited discovery in connection with the PI Motion. On January 8, 2019, Defendants filed (i) a response to Plaintiff A-S's motion for expedited discovery, and (ii) a motion requesting the court transfer the A-S Action to this Court. Subsequently, on January 9, 2019, counsel for Plaintiff A-S met and conferred with counsel for Defendants and stipulated to the transfer of the A-S Action. As part of the agreement, Defendants

provided to counsel for Plaintiffs, on a confidential basis and pursuant to Rule 408 of the Federal Rules of Evidence, key documents regarding the Acquisition. On January 10, 2019, the transferor court entered an order to transfer the A-S Action and on January 14, 2019, it was docketed in this Court.

## II.   THE SETTLEMENT

On January 18, 2019, after arm's-length negotiations, the Plaintiffs and Defendants entered into a Memorandum of Understanding ("MOU") regarding the disclosure of additional information to ARRIS stockholders (the "Supplemental Disclosures") that Class Counsel believed would address the remaining claims asserted in the Actions. That same day, ARRIS filed a Form 8-K with the SEC containing the Supplemental Disclosures, a copy of which is attached as Exhibit A to the Stipulation. On January 23, 2019, Plaintiff A-S withdrew her PI Motion and Plaintiffs informed the Court of the proposed Settlement. That day, the Court ordered that the *Agnes-Sampson* Action and the *Uzun* Action be administratively closed.

On February 1, 2019, ARRIS stockholders voted to approve the Acquisition. On February 11, 2019, the *Kent* Action was voluntarily dismissed. On April 4, 2019, the Acquisition was completed pursuant to the Acquisition Agreement.

Plaintiffs represent that they each owned ARRIS stock at all relevant times and have not assigned, encumbered, or otherwise transferred, in whole or in part, the

claims in the Actions.

Plaintiffs, through Class Counsel, have conducted a thorough investigation of the allegations asserted in the Actions, and the underlying events and transactions relevant to those allegations. Class Counsel reviewed publicly available documents related to the Transaction, non-public documents produced by Defendants, and took the depositions of Bruce McClelland, the CEO and a director of ARRIS, and David Potts, the CFO of ARRIS. Thus, prior to signing the Stipulation, Class Counsel conducted a thorough investigation into the facts and law relating to the Transaction.

## III. THE PROPOSED SETTLEMENT IS WELL WITHIN THE RANGE FOR PRELIMINARY APPROVAL

### A. THE APPLICABLE LEGAL STANDARD

The Eleventh Circuit has repeatedly endorsed an overriding public interest in the settlement of litigation. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."); *see also, Meyer v. Citizens and Southern Bank*, 677 F. Supp. 1196, 1200 (M.D. Ga. 1988). "Settlements conserve judicial resources by avoiding the expense of a complicated and protracted litigation process and are highly favored by the law." *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). The Court has broad discretion in approving a settlement. *Id*. In fact,

"settlement should be facilitated at as early a stage of the litigation as possible." 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1522, at 225-26 (citing 1983 Advisory Committee Notes).

At the preliminary approval stage, there is no need for the Court to "conduct a trial on the merits." *Id*. A "district court may rely upon the judgment of experienced counsel for the parties . . . [and] [a]bsent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'" *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 558 (N.D. Ga. 2007). As preliminary approval is not binding, it is granted unless obviously deficient, particularly where the settlement is the result of good faith negotiations. *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149 (S.D. Fla. June 15, 2010); *see also Manual for Complex Litigation* §30.41 at 237 (3d ed. 1995) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies … and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given"). If it is shown that the court will likely be able to (1) approve the proposal as 'fair, reasonable, and adequate,' and (2) certify the class for purposes of judgment on the proposal," then

6

notice of the proposed settlement must be adequately provided to all class members who will be bound by the proposal. *Williams v. Bluestem Brands, Inc.*, 2019 WL 1450090, at *1 (M.D. Fla. Apr. 2, 2019) (citing Fed. R. Civ. P. 23(e)(1)).

Effective December 1, 2018, Rule 23 was amended to add mandatory but non-exhaustive set of approval criteria:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3);
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Preliminary approval of the Settlement is appropriate here because Plaintiffs can demonstrate that the Settlement is fair, reasonable, and adequate, and that certification of a settlement class is warranted under Rule 23.

## B.   THE SETTLEMENT IS WELL WITHIN THE RANGE OF POSSIBLE APPROVAL

Notice to the Class is proper because the proposed settlement is fair, reasonable, and adequate. Although the approval of a class action settlement is a matter for the Court's discretion, proper consideration should be given to the

consensual decision of the Parties. *See Greco v. Ginn Dev. Co.*, LLC, 2015 U.S. App. LEXIS 20867 at *9 (11th Cir. Dec. 2, 2015) (unpublished) ("a district court may also rely upon the judgment of experienced counsel for the parties. Indeed, absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'"), *quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Warren*, 693 F.Supp. at 1054 ("The Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"). Approval of a settlement is based on six factors, known as the *Bennett* factors:

> (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.

*Columbus Drywall*, 258 F.R.D. at 558-59 (*quoting Bennett*, 737 F.2d at 986). The newly enumerated factors of Rule 23 are largely analogous to the *Bennett* factors. *See Burrow v. Forjas Taurus S.A.*, 2019 WL 4247284, at *7 (S.D. Fla. Sept. 6, 2019).

Based on evaluation of these factors and the analogous factors listed in Fed. R. Civ. P. 23(e)(2) the Court will likely be able to approve the Settlement, thus Preliminary Approval is appropriate.

1.      **Plaintiffs had a Likelihood of Success at Trial, but the Supplemental Disclosures Provided the Precise Relief Sought**

Absent the Supplemental Disclosures, Plaintiffs had a reasonable likelihood of success at trial. But through the Settlement, including the Supplemental Disclosures, Plaintiffs achieved the exact informational relief they sought in their actions and allowed all ARRIS stockholders to cast a fully informed vote.

Section 14(a) obligates Defendants to fully and fairly disclose all material information when soliciting stockholder action. *J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964) ("The purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation. The section stemmed from the congressional belief that fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange."). However, in preparing and disseminating the proxy statements soliciting ARRIS stockholders to vote in favor of the Acquisition, Defendants made material misrepresentations and/or omissions. Most significantly, Defendants omitted—and the Supplemental Disclosures provided— the unlevered free cash flows from the summary of ARRIS' projections.

A company's financial projections are "among the most highly-prized disclosures by investors" facing a merger decision, because a company's management and financial advisors have "meaningful insight into their firms'

9

futures that the market [does] not." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. 2007); *accord Azar v. Blount Int'l, Inc.*, No. 3:16-cv-483-SI, 2017 WL 1055966, 2017 U.S. Dist. LEXIS 39493, at *16 (D. Or. Mar. 20, 2017) ("The established case law shows the importance (and, hence, materiality) of financial projections to shareholders' decision-making."). And free cash flow projections, like those included in the Supplemental Disclosures, are the most highly prized projections shareholders seek when valuing a company for a merger transaction. *See, e.g., Karp v. First Conn. Bancorp, Inc.*, No. RDB-18-2496, 2019 WL 4643799, 2019 U.S. Dist. LEXIS 162819 (D. Md. Sep. 24, 2019) (denying motion to dismiss Section 14(a) claim based on the omission of unlevered free cash flows); *United States v. Smith*, 155 F.3d 1051, 1064 n.20 (9th Cir. 1998) ("After all, investors are concerned, perhaps above all else, with the future cash flows of the companies in which they invest."); *Nichting v. DPL Inc.*, No. 3:11-cv-141, 2011 WL 2892945, 2011 U.S. Dist. LEXIS 76739, at *17 n.16 (S.D. Ohio July 15, 2011) (finding "it smacks of materiality that a voter be made aware of the Company's cash flow projections in order to make an informed decision."). Free cash flow projections are so highly prized because "under sound corporate finance theory, the value of stock should be premised on the expected future cash flows of the corporation . . . ." *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1178 (Del.

Ch. 2010). Free cash flows are preferred over other accounting metrics, because they allow shareholders "to separate economic reality from accounting-based noise." "Morningstar's Approach to Equity Analysis and Security Valuation." *The Valuation Handbook: Valuation Techniques from Today's Top Practitioners*. Ed. Rawley Thomas and Benton E. Gup. Hoboken: John Wiley & Sons, 2010.

The disclosure of EBITDA projections absent unlevered free cash flow projections—like the summary provided in the Proxy—can present a misleading valuation picture of a company. This is due to the fundamental differences between unlevered free cash flow and EBITDA. As Warren Buffet and other financial experts have stated: "References to EBITDA make us shudder. Too many investors focus on earnings before interest, taxes, depreciation, and amortization. That makes sense, only if you think capital expenditures are funded by the tooth fairy."[3] Relying solely on EBITDA to provide a fair summary of a company's financial prospects has numerous pitfalls. EBITDA does not take into account any capital expenditures, working capital requirements, current debt payments, taxes, or other fixed costs that are critical to understand a company's value.[4] As a result of these material

---

[3]    Elizabeth MacDonald, *the Ebitda folly*, FORBES (March 17, 2003), http://www.forbes.com/global/2003/0317/024.html.

[4]    Cody Boyte, *Why EBITDA is Not Cash Flow*, AXIAL FORUM (Nov. 19, 2013), http://www.axial.net/forum/ebitda-cash-flow/

differences between EBITDA and unlevered free cash flows, experts recognize unlevered free cash flows as a much more accurate measure when it comes to analyzing the expected performance of a company.

And that is the exact scenario that was present in the Proxy and cured through the Supplemental Disclosures, as illustrated by the chart below:

1.   The section of the Proxy Statement entitled "The Acquisition—Certain Financial Projections" is hereby supplemented as follows:

*The table on page 46 of the Proxy Statement is amended and restated to read as follows:*

|  | 2019E | 2020E | 2021E |
|---|---|---|---|
| Sales | $7,109 | $7,311 | $7,554 |
| Gross Margin | $2,123 | $2,236 | $2,386 |
| *Gross Margin %* | *29.9%* | *30.6%* | *31.6%* |
| Operating Expenses[1] | $1,382 | $1,416 | $1,475 |
| *% of Revenue* | *19.4%* | *19.4%* | *19.5%* |
| DOI[2] | $741 | $820 | $911 |
| *Margin %* | *10.4%* | *11.2%* | *12.1%* |
| Non-GAAP EBITDA[3] | $928 | $1,015 | $1,108 |
| *Margin %* | *13.1%* | *13.9%* | *14.7%* |
| Adjusted EPS[4] | $3.60 | $4.27 | $5.10 |
| Diluted Shares | 173.0 | 162.0 | 151.0 |
| Unlevered Free Cash Flow[5] | $681 | $664 | $734 |

Exhibit A at 3. The unlevered free cash flow projections indicate a decline in the Company's financial performance for 2020 that was previously undetectable to ARRIS shareholders. The original disclosures provide no indication of this downturn, as the closest metric, Non-GAAP EBITDA, was projected to *increase* in both 2020 and 2021. Accordingly, by securing the disclosure of this material information, Plaintiffs achieved the precise results demanded in their complaints and assured the fully informed Vote that would have been impossible had Plaintiffs pursued the actions through post-close litigation. *See Allergan, Inc. v. Valeant*

*Pharms. Int'l, Inc.*, No. SACV 14-1214 DOC(ANx), 2014 U.S. Dist. LEXIS 156227, at *50 (C.D. Cal. Nov. 4, 2014) ("An uninformed shareholder vote is often considered an irreparable harm, particularly because the *raison d'etre* of many of the securities laws is to ensure that shareholders make informed decisions."); *Mony Grp, Inc. v. Highfields Capital Mgmt.*, L.P., 368 F.3d 138, 148 (2d Cir. 2004) ("In passing Section 14(a), Congress sought to avoid a very particular harm--the solicitation of shareholder proxies without adequate disclosure."); *Sonesta Int'l Hotels Corp. v. Wellington Assoc.*, 483 F.2d 247, 250-51 (2d Cir. 1973) ("once the [acquisition] has been consummated it becomes difficult, and sometimes virtually impossible, for a court to 'unscramble the eggs.'"). In other words, Plaintiffs "provide[d] a necessary supplement to Commission action[,]" which was the very reason the Supreme Court held stockholders have a private right of action under Section 14(a). *Borak*, 377 U.S. at 432 (noting that the SEC examines thousands of "proxy statements annually and each of them must necessarily be expedited. Time does not permit an independent examination of the facts set out in the proxy material.").

Under Fed. R. Civ. P. 23(e)(2), the immediate and universal relief provided for the Class is adequate given the risks and costs of trial and appeal, and the proposed award of attorneys' fees in the amount of $437,500 is reasonable.

### 2.      Continued Litigation Would Be Expensive and Lengthy

A settlement that "will alleviate the need for judicial exploration of ... complex subjects, reduce litigation costs, and eliminate the significant risk that individual claimants might recover nothing" merits approval. *Lipuma*, 406 F. Supp. 2d at 1324. Such is the case here. Approval will avoid complex, expensive, and lengthy litigation, saving resources of the parties and the Court. A national class action such as this one typically involves seemingly endless discovery; extensive expert involvement; argument and voluminous briefing over certification, summary judgment; a lengthy trial; and appeals. The Settlement thus preserved judicial resources while obtaining swift and effective relief for the Class.

### 3.      The Settlement Was Negotiated at Arms' Length

The proposed Settlement before the Court was achieved after informed, arms-length negotiations between parties as required by Fed. R. Civ. P. 23(e)(2)(B), and falls within the range of reasonableness, meriting notice of the settlement to Settlement Class Members. As discussed above, Class Counsel ardently negotiated for Defendants to file the Supplemental Disclosures. Agreed-upon Plaintiffs' attorneys' fees in the amount of $437,500 were negotiated following the close of the Transaction at arms-length, and only after the parties had entered into the memorandum of understanding providing for the Supplemental Disclosures. This

amount is in line with similar awards in other disclosure-only settlements. *See, e.g.*, *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1178 (Del. Ch. 2010) (awarding $750,000 for disclosures including free cash flow figures).

At this point, the Court need not provide an answer to the ultimate question: whether the Settlement is fair, reasonable and adequate. Plaintiffs only ask the Court to permit notice of the terms of the Settlement to be sent to the Class, and to schedule a final hearing, pursuant to Federal Rule of Civil Procedure 23(e), to consider any views expressed by Class Members as to the fairness of the Settlement. 5 James Wm. Moore, *Moore's Federal Practice* §23.85[3], at 23-353 to 23-354 (3d ed. 1999).

### 4. The Degree of Opposition to the Settlement

This factor is more appropriate for the final approval analysis, as courts do not consider the amount of opposition until notice has been provided to settlement class members. *See Columbus Drywall*, 258 F.R.D. at 560.

### 5. The Stage of the Proceedings

The purpose of this factor is "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. Class Counsel have fully evaluated and thoroughly investigated the facts and law, and conducted thorough discovery into the issues pertinent to their Actions, including

15

the review of the documents central to the Transaction and the deposition of ARRIS'
CEO and CFO. Class Counsel have significant experience in securities and other
complex class action litigation, and have negotiated hundreds of other substantial
class action settlements throughout the country. Class Counsel are "well informed
as to the operative facts" and "considerable risks" of the Action. *See Reade-Alvarez
v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006). Courts
recognize that the opinion of experienced and informed counsel supporting a
proposed settlement is entitled to considerable weight. *Lipuma v. Am. Express Co.*,
406 F. Supp. 2d 1298, 1318-19 (S.D. Fla. 2005) (approving class settlement where
the "benefits conferred upon the Class are substantial, and are the result of informed,
arm's-length negotiations by experienced Class Counsel"). It is Plaintiffs' and Class
Counsel's informed opinion that, given the uncertainty and further substantial
expense of pursuing the Action against Defendants through trial and possible
appeals, the proposed Settlement is fair, reasonable and adequate, and in the best
interests of the Class and warrants preliminary approval.

As outlined in the proposed Scheduling Order, Defendants will notify the
Class of the Settlement by mailing the Notice to all stockholders of record that are
members of the Class at their last known address appearing in the stock transfer
records maintained by or on behalf of ARRIS, at least sixty (60) calendar days before

the date of the final settlement hearing. The Notice will advise Class Members of the essential terms of the Settlement, set forth the procedure for objecting to the Settlement, and provide specifics on the date, time and place of the Settlement Hearing. Class Counsel believes that the proposed Notice represents the best notice practicable under the circumstances because it fairly apprises the Class of their rights with respect to the Settlement and, thus, it should be approved by the Court.

## IV. CERTIFICATION OF THE PROPOSED CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE UNDER RULES 23(a), 23(b)(1) AND (b)(2)

In granting preliminary settlement approval, the Court should also certify the Class for Settlement purposes under Rules 23(a), 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure. Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential*, 163 F.R.D. at 205. "A class may be certified solely for the purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1313-14 (S.D. Fla. 2005) (internal quotations omitted). The proposed Scheduling Order provides for certification of the Class as a non-opt out class, and also provides for the conditional appointment of Co-Lead Counsel.

Pursuant to Federal Rule 23, an action may be maintained as a class action if each of Rule 23(a) four requirements is met:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*See, e.g., Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 553 (N.D. Ga. 2007).

Additionally, in order to be maintained as a class action, the action must qualify under one of the subdivisions of Rule 23(b):

> (1) prosecuting separate actions by or against individual members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class

members predominate over any questions affecting only individual
members, and that a class action is superior to other available methods
for fairly and efficiently adjudicating the controversy.

*Id.* As set forth below, all of the requirements of Rule 23 are met in this case,

justifying preliminary certification of the proposed Class for settlement purposes.

### A.     THE CLASS IS SUFFICIENTLY NUMEROUS

The proposed Class is sufficiently numerous to satisfy the requirement of Rule

23(a). The Eleventh Circuit has recognized that there is no "definite standard as to

the size of a given class, and plaintiff's estimate need only be reasonable." *Fabricant*

*v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (*citing Kilgo v. Bowman*

*Transp. Inc.*, 789 F.2d 859, 878 (11th Cir. 1986)). Generally, the numerosity

requirement is satisfied if the class has 40 or more members. *See Cox v. Am. Cast*

*Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

The Class consists of all record and beneficial holders of common stock of the

Company (excluding Defendants in the Action, their immediate families and related

entities) for the period between and including November 8, 2018 and April 4, 2019.

While the exact number of Class members is unknown, the Class surely consists of

thousands given the number of outstanding shares of ARRIS (173,858,030 shares

issued and outstanding on November 26, 2018 according to the Proxy) during the

Settlement Class Period.

### B.    COMMON QUESTIONS OF LAW AND FACT EXIST

To certify the Class there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[C]ommonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members,'" *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (internal citation omitted), and "is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *Terrill v. Electrolux Home Products, Inc.*, 295 F.R.D. 671, 685 (S.D. Ga. 2013), *vacated and remanded on other grounds*, *Brown v. Electrolux Home Prods.*, 817 F.3d 1225 (11th Cir. 2016) (internal quotations omitted). In this case, questions of law and fact common to the Settlement Class include, among others, the following: (1) the materiality and adequacy of the Supplemental Disclosures, and (2) whether the settlement is reasonable, fair, and adequate.

### C.    PLAINTIFFS' CLAIMS ARE TYPICAL OF THE CLASS

Fed. R. of Civ. P.23(a)(3) requires the, "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement primarily focuses on whether the named plaintiffs' claims "have the same essential characteristics" as claims of other class members. *See, e.g., Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). The

requirement is undemanding, *In re Disposable Contact Lens Anti. Lit.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996), requiring only some nexus between the named plaintiffs' claims and the common questions uniting the class. *See, e.g., Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003). A sufficient nexus exists if the claims arise from the same pattern of conduct and there is a similarity of legal theories. *See, e.g., Williams*, 568 F.3d at 1357.

Plaintiffs' claims are essentially identical to those of the Class Members, as they are all equally affected as ARRIS stockholders by the Transaction, the Company and the Individual Defendants' disclosures regarding the Transaction, and the Settlement relating to these matters.

## D. PLAINTIFFS WILL ADEQUATELY PROTECT THE INTERESTS OF THE CLASS

The Eleventh Circuit has outlined two criteria for determining whether the proposed class representatives will be adequate: "(1) whether plaintiffs have interests antagonistic to the interests of other class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall*, 258 F.R.D. at 555.

Here, Plaintiffs' interests are completely aligned with those of the Class, because they stand in a position identical to all other Company stockholders in the Class, and would benefit from the same relief regarding the Transaction. Plaintiffs,

through Class Counsel, have vigorously prosecuted this case for the benefit of all members of the Class and negotiated the Settlement, including the Supplemental Disclosures, which confers a substantial benefit on all of ARRIS stockholders.

Moreover, Class Counsel possesses extensive experience litigating complex class actions on behalf of shareholders. *See* Exhibit 2 to Decl., (Monteverde & Associates PC Firm Resume), and Exhibit 3 to Decl., (Levi & Korsinsky, LLP ("LK") Firm Resume). The cases and accolades noted in the Firm Resumes demonstrate that Class Counsel are more than adequate to serve as Lead Counsel in this case and represent the Class in connection with the Settlement.

## E.     THE REQUIREMENTS OF RULE 23(B) ARE SATISFIED

Class certification is warranted if any Rule 23(b)'s provisions are met. Here, preliminary certification of the Class is warranted under Rule 23(b)(1) and (b)(2).

### 1.     Rule 23(b)(1)

Rule 23(b)(1) authorizes a mandatory class action

> if the prosecution of separate actions by or against individual members of the class would create a risk of (i) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (ii) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700 (internal quotations omitted).

### 2.     Rule 23(b)(2)

Rule 23(b)(2) also authorizes a class action "if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, Defendants' alleged misconduct affected the proposed Class in a way that is generally applicable to the entire Class, and Plaintiffs sought injunctive relief. Moreover, the Supplemental Disclosures obtained in the Settlement conferred a substantial benefit on the entire Class.

## V.     THE PROPOSED PLAN OF CLASS NOTICE IS APPROPRIATE

In general, "[n]either a Rule 23(b)(1) or (2) class action requires notice to class members or the option to opt-out." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 306 (5th Cir. 2007). Rule 23(c)(2)(A) provides, however, that the Court "may direct the appropriate notice" to a Rule 23(b)(1) or (b)(2) class.

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the [Settlement] proposal." Fed. R. Civ.

P. 23(e)(1). Here, Plaintiffs and Defendants propose mailing Class members a Notice discussing the background and procedural history of this litigation, including the claims asserted against Defendants; a summary of the Settlement terms; an explanation of the persons and claims being released under the Settlement; a detailed explanation of reasons for the Settlement; a description of the Class; the date, time and place of the final approval hearing; a statement of the Class members' right to appear and object with or without counsel and the procedures which must be followed to be heard; a statement that Class Counsel intend to petition for an award of attorneys' fees and expenses; and whom to contact if more information about the Settlement is desired. *See* Stipulation; Notice (Exhibit C to Stipulation). Accordingly, the proposed method and content of Notice comports with the requirements of due process and Rule 23 and should be approved by the Court. *See, e.g., DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 298 (W.D. Tex. 2007) (notice sufficient where it "properly identif[ies] the plaintiff class and generally describe the terms of the settlement so as to alert members with adverse viewpoints to investigate and to come forward and be heard."); *In re OCA, Inc.*, No. 05-2165, 2008 U.S. Dist. LEXIS 84869, at *46-52 (E.D. La. Oct. 17, 2008) (mailing of the notice to brokerage houses and/or stockholders constituted best notice practicable under the circumstances.).

## VI.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule:

i.    No later than ten (10) calendar days following the filing of the Stipulation with the Court, Defendants shall serve upon the appropriate State official of each State in which a Member of the Settlement Class resides and the Attorney General of the United States a notice of the proposed settlement (the "CAFA Notice") in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715 et seq. ("CAFA").

ii.    Notice mailed to Class within sixty (60) calendar days before the Final Settlement Hearing;

iii.    Plaintiffs shall file their papers in support of final approval of the Settlement and Fee Application within thirty (30) days of the Final Settlement Hearing.

iv.    Objections to the Settlement shall be filed and served within fourteen (14) days of the Settlement Hearing;

v.    Plaintiffs shall file their reply papers in support of final approval of the Settlement within seven (7) days of the Final Settlement Hearing; and

vi.    The Final Settlement Hearing at least 100 calendar days from the entry of the Preliminary Approval Order.

## VII.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement and enter the proposed Scheduling Order attached to Stipulation as Exhibit B.

Dated: December 19, 2019

Respectfully submitted,

**WEBB, KLASE & LEMOND, LLC**

*/s/ E. Adam Webb*
E. Adam Webb, GA Bar No. 7439410
Matthew C. Klase, GA Bar No. 141903
1900 The Exchange, S.E. Suite 480
Atlanta, Georgia 30339
Phone: 770.444.0773
Fax: 770.217.9950
Adam@WebbLLC.com
Matt@WebbLLC.com

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Phone: 212.971.1341
jmonteverde@monteverdelaw.com

**LEVI & KORSINSKY, LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street NW, Suite 115
Washington, DC 20007
Phone: 202.524.4290
denright@zlk.com
etripodi@zlk.com

Attorneys for Plaintiff

## TYPE AND FONT CERTIFICATION

The undersigned certifies that this brief complies with Local Rule 5.1(B) regarding typefaces and fonts.

*/s/ E. Adam Webb*
E. Adam Webb

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of December, 2019, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system which automatically sends email notification of such filing to all attorneys of record.

*/s/ E. Adam Webb*
E. Adam Webb